**Earl V. VOELKER and Pascal Company, Inc., Plaintiffs,**

**v.**

**David L. LADD, Commissioner of Patents, Defendant.**

**Civ. A. No. 3459–61.**

United States District Court District of Columbia.

June 28, 1963.

George R. Jones, Beale & Jones, Washington, D. C., Robert W. Beach, Seattle, Wash., for plaintiff.

Clarence W. Moore, Solicitor, U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action filed pursuant to 35 U.S.C. § 145 involves an application of the plaintiff Voelker, Serial No. 558,204, filed January 10, 1956, entitled "Epinephrine Compositions".

All of claims 2 through 8, inclusive, are for the product, and claim 10 a method claim, were rejected by the Patent Office tribunals as unpatentable over Foldes "Prolongation of Hyperglycemic Effect of Epinephrine in Rabbits by Addition of Zinc Chloride," Proceedings of the Society for Experimental Biology and Medicine, June, 1944 Edition, No. 14,-668, pages 236–238.

Claims 2, 3 and 10 are representative and read as follows:

"2. A stabilized epinephrine composition comprising freshly prepared epinephrine and at least 0.2% by weight of a salt of an inorganic acid including a metal selected from the group consisting of zinc, aluminum and magnesium, and a radical selected from the group consisting of chloride and sulphate as a preservative for retarding coloring of the epinephrine.

"3. A hemostatic and astringent epinephrine composition comprising from 2% to 15% by weight of epinephrine and from 2% to 8% by weight of a salt of an inorganic acid including a metal selected from the group consisting of zinc and aluminum, and an acid radical selected from the group consisting of chloride and sulphate.

"10. The method of stabilizing an epinephrine composition which comprises greatly retarding oxidation coloring of an epinephrine substance by adding thereto a salt of an inorganic acid including a metal selected from the group consisting of zinc, aluminum, and magnesium, and of radical selected from the group consisting of chloride and sulphate."

A reading of those claims shows that the alleged invention relates to an epinephrine composition and to a method of stabilizing epinephrine.

It is disclosed in the application that epinephrine is known for its hemostatic effect and that it begins to oxidize immediately after it has been prepared. To offset the tendency to oxidize it is customary to add a reducing agent. Hydrochloric acid may be added to the epinephrine with enough additional acid to produce a Ph of 2 to 3. A disclosure of the styptic nature of zinc and aluminum salts is shown with the admonition that when the solution of these salts is increased appreciably above 8% tissue may be destroyed.

The reference sets out the addition of zinc chloride to a solution of epinephrine which is admitted by counsel for plaintiffs. While it is true that the reference does nothing to hint that Dr. Foldes disclosed any indication with respect to the stabilizing or oxidizing retarding effect in the composition, the fact that zinc chloride is added to the solution of epinephrine, and as that is the only procedural step required by claim 10, and further, that the concentration of epinephrine and zinc chloride, or their ratio to each other is absent, the Board of Appeals held, and properly so, in the opinion of the Court, that there is no error in the rejection of that claim.

Appellants contend that the claims herein are patentable over the reference for the reason that the amounts of epinephrine and zinc chloride are set out in the claims, and that their epinephrine is freshly prepared. With respect to the latter contention, it is disclosed in the reference that "epinephrine hydrochloride was freshly prepared from epinephrine base on each occasion and Zn $Cl_2$ was added from a concentrated solution just before injection."

It may be noted here that Dr. Foldes was experimenting on a prolonging effect of the composition for increasing hyperglycemic results. He stated in the reference that with the zinc concentration below 0.4% there was no noticeable effect but that the concentration reached its maximum at 1.2%, but then only when injected in dense subcutaneous tissue as in the gluteal region.

The Board was of the opinion that it is immaterial whether the epinephrine composition is immediately prepared, immediately used, or immediately stored under antioxidizing conditions. The Court agrees with that opinion, particularly as buttressed by the fact that Dr. Foldes must be deemed to be an alert and skillful chemist who must be presumed to have employed freshly prepared epinephrine before any deterioration was present as would be shown by discoloration indicating instability, such ineffectiveness being well known to the art.

The total composition, apparently in aqueous solution, appears in some of the product claims on a percentage basis in the amounts of epinephrine and salt, and the disclosure appears to have the effectiveness of the salt on the relative amount of epinephrine present in the composition.

It is disclosed in the reference that the ratio of epinephrine to zinc chloride may vary from 1:1 up to 1:20 and nothing herein indicates that such ratio either could not be, or is not actually successful in stabilization.

It appears that the ratio disclosed in the reference encompasses the ratio of that of the applicant. Claims 3 through 6, and claim 8, set out ratios claiming a 2–15% range of epinephrine concentration, and 2–8% of a metal salt.

As above noted, the reference article sets out no noticeable hyperglycemic effect below 0.4% concentration, but clearly indicates a proper effect at that concentration. At the trial here, Dr. Foldes in his testimony confirmed that conclusion. Therefore, the reference which teaches a ratio of 1:4 (0.1 of epinephrine with 0.4% zinc chloride) corresponds to one extreme of plaintiffs' range and must be considered as effective in stabilizing epinephrine.

The Board also rejected claims 2, 3, 4 and 10 as improper Markush grouping because they are merely different in scope. In view of the conclusion of the Court, it is not necessary to lengthen this opinion by commenting on that rejection.

After considering the record made in the Patent Office and the testimony and exhibits at the trial here, together with the extensive briefs of counsel for the parties, the Court finds that the presumption of correctness attaching to the decision of the Board of Appeals has not been shown to be clearly in error.

The Court, therefore, finds that claims 2 to 8, inclusive, and claim 10, are unpatentable as held by the tribunals of the Patent Office.

This opinion shall be deemed to constitute findings of fact and conclusions of law.